## Settlement Agreement

The parties to this agreement are as follows:

I. South Beach Skin Care, Inc., a Florida corporation. (The "company")

II. Amit Suneja, an individual. ("Amit")

III. Vyacheslav Borodin, an individual. ("Borodin")

IV. Chris V. Suarez, an individual. ("Suarez")

The parties acknowledge that there are disputes and controversies between them and they agree to the following in lieu of engaging litigation at this time. Without prejudice to any positions that the parties may take in litigation, the parties agree to the following:

1. No party shall institute legal proceedings until the conclusion of the below referenced forensic audit and the valuation of the company, and a meeting with Howard Tescher to conclude the instant mediation, and Howard Tescher declaring an impasse. In the event a party to this agreement breaches this agreement, any non-breaching party may immediately institute legal proceedings to enforce this agreement and the prevailing party shall be entitled to recover the reasonable attorney fees and court costs. The resumption of the mediation shall be scheduled by the parties no later than 60 days from the later of: a. the completion of the audit and b. the business valuation, referenced below.

2. Within 15 days of the completion of the audit referenced in paragraph 4., the parties will agree to the appointment of an independent certified business valuation expert to conduct an appraisal of the business. If the parties cannot agree to the business valuation expert, Amit and Suarez shall each choose their business valuation expert who shall consult and agree to a third certified business valuation expert who shall perform the business valuation. The company shall pay the expense of any experts required by this paragraph.

3. The current customer relationship management program ("CRM2") shall be included in the business valuation, without prejudice to Borodin's claims to ownership of either 1/3 share in the company or the CRM2.

4. Within 15 days, the parties will agree to the appointment of an independent forensic or other accountant (the "accountant") to conduct an audit of the company for each year the company operated, to determine, among other things, what amounts were distributed to Suarez, Amit and Borodin, who are each to have received 1/3 of the distributions. If the parties cannot agree to the accountant, Amit and Suarez shall each choose their accountant who shall consult and agree to a third accountant who shall perform the audit. The company shall pay the expense of any experts required by this paragraph. The determination of the auditor shall be binding upon the parites.

5. All distributions, payroll, payment of expenses, and the like, as well as payments to third parties such as "Curbside Media" or any other entity, shall be included within the scope of the audit. The Accountant shall report the amounts attributable to each of the three individuals and determine how much is required to equalize the distributions.

6. The parties will provide the accountant unlimited access to all books and records reasonably requested. The parties shall also provide any secondary documents or records reasonably required by the accountant to reach conclusions, whether they be in the hands of the parties, their agents, or any third parties from whom the parties can request and receive the information. The parties shall provide their full cooperation to the accountant, including, but not limited to, answering any questions the accountant may have. All parties shall have full access to all information requested or provided.

7. Amit, Borodin and Suarez shall, until otherwise agreed, take equal monthly distributions (one third each) in an amount unanimously agreed upon by them. (This excludes



2

the equalization of distributions required by the audit.). There shall be no payments to or for Amit, Borodin and Suarez, including expense reimbursements, unless otherwise agreed in writing by Amit, Borodin and Suarez. This provision shall survive termination of this agreement, pending order of court.

8. All accounts, checks, wire transfers and withdrawals of any kind from any account shall require two signatures. The checks must be signed by both Amit and Suarez. In the event either Amit or Suarez are unavailable to sign a check, one party shall be permitted to sign the check upon written assent, sent by fax, text or email, from the party not available. This provision shall survive termination of this agreement, pending order of court.

9. There shall be no change in employees of the company, absent written agreement of Amit, Borodin and Suarez.

10. There shall be no attempts by any party to take any action inconsistent with this attempt to resolve matters and maintain the status quo ante during the pendency of this settlement agreement. This shall include the following:

   a. The parties shall not file, maintain, encourage or cause (directly or indirectly) any new litigation against each other or the company.

   b. The parties, their agents and employees shall not copy any software, data or company information, including the CRM2; or interfere with the company's use or operation of any software, data or company information. The company's employees and programmers shall have access to all data on the servers through the interface of CRM2 only. During the term of this agreement, Borodin shall be in exclusive possession of the direct database access through the SQL, including CRM2's code and passwords.

3

    c. The company's programmers shall work under the direction of and be supervised by Borodin. Borodin will work a minimum of 30 hours per week at the office, between Mondays and Fridays, unless otherwise agreed to in writing between the parties; all weeks in which the office is open a full week.

    d. The parties shall not attempt to make any changes to the corporate structure or the appearance of same with the State of Florida or on Florida's corporate reporting website, Sunbiz.org, except that the parties agree that Amit shall reinstate Suarez as Treasurer, by resolution which shall be transmitted to the State by overnight mail, sent by Friday October 12, 2012. Amit shall remain President, Secretary and sole Director.

    e. The parties shall maintain the terms of this agreement as confidential and shall not discuss this matter with any current employees, vendors, suppliers, business associates or third parties; other than the parties' respective counsel and other professionals.

11. In furtherance of this agreement, Suarez agrees to deposit Nine Hundred Fifty Thousand and 00/100 dollars ($950,000.00) which was removed from a company account, as follows:

    a. One Hundred Thousand dollars ($100,000.00) shall be deposited into a new company operating account, with Suarez and Amit as the signators on the account, with the balance Eight Hundred Fifty Thousand dollars ($850,000.00) to be deposited into the trust account of Suarez' counsel. Suarez shall take all action necessary to effectuate the transfer. Suarez has represented that the accounts in which this money was deposited have been frozen by the bank. The parties shall take all action reasonably required by

4    VB    Q/S 

the bank to obtain a release of the funds and to lift any hold on the company's and Suarez' personal bank accounts, including, but not necessarily limited to, executing an indemnity agreement (or the like) in favor of the bank. These documents shall be drafted by Amit's counsel, with the input of Suarez' counsel. This task shall be initiated within two business days. The company shall pay the reasonable attorney fees of this task upon submission of an invoice.

12. In furtherance of this agreement, Amit agrees to deposit Seven Hundred Thousand and 00/100 dollars ($700,000.00) which was removed from the company account, into Amit's counsel's trust account, simultaneously (within 24 hours) with Suarez' deposit.

13. Respective Counsel shall simultaneously deposit the amounts held into the new company operating account. Time is of the essence to the deposit of the monies, and the parties shall make best efforts to effectuate the transfers within ten business days.

14. All assets or proceeds of any investments initiated by Suarez into Curbside Media or any other entity shall be disclosed. Any closing, escrow or settlement agent shall be disclosed. Any proceeds of any transactions, including two disclosed to be pending (Northview and Doris Avenue) shall be held in escrow pending written direction of Suarez and Amit. Any party may disclose this agreement to any closing, escrow or settlement agent to obtain compliance with this agreement.

15. In the event that the Curbside Media transactions referenced above fail to close by November 15, 2012, Amit shall be entitled to take an advance of distribution of $200,000.00 pending the closing(s).

5



16. This agreement is without prejudice to any party's position in any litigation which is commenced after the impasse of the mediation conference, and shall not constitute an admission of any fact. No party admits any liability by entering into this agreement.

17. This agreement can be modified only by written agreement by all parties.

18. The mediator, Howard Tescher, shall be paid by the Company.

19. This is the last paragraph, signatures follow.

Dated, this ___ day of October, 2012 by and between:

South Beach Skin Care, Inc.

By: _____
Amit Suneja, President

By: _____
Chris V. Suarez, Agent

Amit Suneja
_____

Vyacheslav Borodin
_____

Chris V. Suarez
_____

Lubell & Rosen, LLC, Counsel for Amit
By: _____

Gray Robinson, P.A., Counsel for Borodin
By: _____  10/8/12

Entin & Della Fera, P.A., Counsel for Suarez

By: _____

6