UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cv-60978-RAR

LIFECELL IP HOLDINGS, LLC, a Florida limited liability
company, and SOUTH BEACH SKIN CARE, INC., a Florida
corporation,
Plaintiffs,

v.

COSMEDIQUE, LLC, a Delaware limited liability company,
GLOBAL MEDIA GROUP, LLC, a Delaware limited liability
company, VYACHESLAV BORODIN, a natural person,
and JOHN DOES 1–5,
Defendants.
_____/

VYACHESLAV BORODIN, a natural person, COSMEDIQUE
LLC, a Delaware limited liability company, and GLOBAL
MEDIA GROUP, LLC, a Delaware limited liability company,
Counterclaim Plaintiffs,

v.

SOUTH BEACH SKIN CARE, INC., a Florida corporation,
and LIFECELL IP HOLDINGS, LLC, a Florida limited liability
company,
Counterclaim Defendants.
_____/

VYACHESLAV BORODIN, a natural person, COSMEDIQUE
LLC, a Delaware limited liability company, and GLOBAL
MEDIA GROUP, LLC, a Delaware limited liability company,
Third-Party Plaintiffs,

v.

CHRIS SUAREZ,
Third-Party Defendant.
_____/

1

## REPORT AND RECOMMENDATION[1] ON
## MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on the parties' competing motions for partial summary judgment.  Defendant, Vyacheslav Borodin ("Borodin"), filed a Motion for Partial Summary Judgment, ECF No. [202], and a Statement of Material Facts, ECF No. [203].  Plaintiffs, South Beach Skin Care ("SBSC") and Lifecell IP Holdings, LLC ("Lifecell"), and Third-Party Plaintiff, Chris Suarez ("Suarez"), filed a Response in Opposition, ECF Nos. [222], [227], along with a Response in Opposition to the Statement of Undisputed Facts, ECF Nos. [214], [228], and Borodin, Cosmedique, LLC ("Cosmedique"), and Global Media Group, LLC ("Global"), filed a Reply, ECF Nos. [234] [243]. [2]

Additionally, SBSC, Lifecell, and Suarez filed a Joint Motion for Partial Summary Judgment, ECF Nos. [204], [225], and a Statement of Material Facts, ECF Nos. [205], [226].  Borodin, Cosmedique, and Global filed a Response in Opposition, ECF Nos. [216], [239], along with a Response in Opposition to the Statement of Undisputed Facts, ECF No. [217], and SBSC, Lifecell, and Suarez filed a Joint Reply, ECF No. [238].  On March 23, 2021, the parties appeared for a hearing on this matter.  ECF No. [256].  Upon due consideration of the motions, the pertinent portions of the record, and being otherwise fully advised on the premises, it is hereby **RECOMMENDED** that Borodin's Motion for Partial Summary Judgment, ECF No. [202], be

---

[1] The instant motions were referred to the undersigned by the Honorable Rodolfo A. Ruiz, United States District Judge.  ECF No. [97].

[2] The Motion for Partial Summary Judgment was filed by Borodin alone.  ECF No. [202] at 1. However, the Reply in Support of the Motion for Partial Summary Judgment was filed by Borodin, Cosmedique LLC, and Global Media Group, LLC.  ECF No. [234] at 1–2.  Despite the inconsistency and to avoid further confusion, the Court will refer to the aforementioned parties as "Defendants" for the purposes of ECF No. [202].

**DENIED**, and SBSC, Lifecell, and Suarez's Joint Motion for Partial Summary Judgment, ECF No. [204], be **GRANTED IN PART AND DENIED IN PART**.

## I.      SUMMARY OF UNDISPUTED FACTS[3]

On April 16, 2019, Lifecell and SBSC filed suit against Cosmedique and Global, asserting one count for false advertising (Count I), one count for copyright infringement (Count II), and one count for common law unfair competition (Count III).  ECF No. [1] at 7–18.  On July 2, 2019, Lifecell and SBSC filed their First Amended Complaint, adding Borodin and John Does 1–5 as Defendants.  ECF No. [30] at 1.

On August 26, 2020, Defendants filed their Second Amended Counterclaim against Lifecell and SBSC and their Third-Party Complaint against Suarez.  ECF No. [189].  In their Counterclaim, Defendants assert one count for breach of contract against SBSC only (Count I), one count for fraud in the inducement against SBSC only (Count II), and one count for false advertising against Lifecell and SBSC (Count III).  *Id.* at 20–32.  In the Third-Party Complaint against Suarez, Defendants assert one count for breach of contract (Count I) and one count for fraud in the inducement (Count II).  *Id.* at 32–37.

As to Plaintiffs, SBSC "manufactures and sells skin creams and similar cosmetic products." ECF No. [30] ¶ 8.  Specifically, SBSC "sells its goods under the federal registered marks Lifecell and Lifecell South Beach Skincare . . . ."  *Id.* (emphasis omitted).  Lifecell is the owner of copyright registration nos. VA 2-109-400 and VA 2-109-399 for the Lifecell product box and tube.  ECF No. [226] ¶ 12.  Suarez is the corporate representative for SBSC.  *Id.* ¶ 1.

---

[3] In a previous Report and Recommendation, the undersigned noted that the filings in this case were difficult to comprehend given their lack of clarity and consistency.  ECF No. [183] at 6. Notwithstanding the undersigned's admonition, the competing motions before the Court are equally as disjointed.

Case 0:19-cv-60978-RAR   Document 258   Entered on FLSD Docket 06/07/2021   Page 4 of 21


As to Defendants, Global is the owner of the United States Trademark Registration No. 5,177,598 for Cosmedique, a company that specializes in the manufacturing and sale of skin products. ECF No. [30] ¶ 12. Cosmedique is owned and operated by Borodin, who previously worked for SBSC, specializing in marketing, customer relations management, and website performance for the Lifecell product. *Id.* ¶¶ 16–17.

Lifecell and Cosmedique sell competing skin products. ECF No. [226] ¶ 9. The crux of the Amended Complaint is that Cosmedique, Global, and Borodin infringed on Lifecell's copyright and engaged in unfair competition through the sale of their competing products. *Id.* ¶¶ 16–20. Moreover, the Second Amended Counterclaim and Third-Party Complaint center around the use of two Customer Relations Management Systems ("CRM1" and "CRM2"), which were used for order processing and fulfillment. ECF No. [189] at 21–23. Stemming from previous litigation among Borodin, SBSC, and Suarez, the parties entered into a Settlement Agreement on November 3, 2012 regarding the ownership and use of the CRMs. *See* ECF No. [189-2].

The Settlement Agreement provides in relevant part:

> Suarez and SBSC shall pay Borodin the total sum of $600,000.00 as a complete resolution of all claims between the Parties, including but not limited to the unpaid 1/3 distribution of profits due and owing to Borodin from SBSC (the 'Settlement Funds"). The Parties mutually agree that the Settlement Funds are not being paid for the use or ownership of any derivation of the Customer Relationship Management Program ("CRM") developed by Borodin, which are CRM 1 and 2, which ownership shall remain completely vested with Borodin. SBSC and Suarez, or any related or affiliated company, shall not in any way use CRMI or CRM2 or any derivative thereof in any computer language.

*Id.* ¶ 3. [4] The Settlement Agreement further provides:

---

[4] The parties also entered into an Interim Settlement Agreement on October 8, 2012, which required, among other things, the deposit of money that was removed from a company account into designated trust accounts. *See* ECF No. [189-1] ¶¶ 11–12.

> Borodin hereby disclaims any claim of ownership of a 1/3 interest in the stock of the Company. However, Borodin does maintain that he owns ½ of the shares of SBSC belonging to Amit (half of 50% of total SBSC shares) pursuant to Borodin and Amit's written assignment of stock, and neither SBSC nor Suarez, object to the Assignment by and between Amit and Borodin.

*Id.* ¶ 6. Following the execution of the Settlement Agreement, SBSC hired third-party Andres Ramirez and Piers Chambers to develop a Customer Relations Management System for SBSC's use ("CRM3").  ECF No. [226] ¶ 7.  On October 9, 2012, Borodin registered CRM2 with the United States Copyright Office.  ECF No. [189-4].  Thereafter, on December 28, 2012, Andres Ramirez (as a joint author with Borodin) registered CRM1 with the United States Copyright Office.  ECF No. [189-3].

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed R. Civ. P. 56.  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).  Speculation or conjecture cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v.*

*City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment.  *Bailey v. Allgas, Inc*., 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* Fed. R. Civ. P. 56(e).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc*., 975 F.2d 1518, 1534 (11th Cir. 1992).  But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    ANALYSIS

### a.  Issues Of Material Fact Preclude The Entry Of Summary Judgment On Defendants' Breach Of Contract Claim

Defendants argue that they are entitled to summary judgment as to Count I of the Second Amended Counterclaim for breach of contract and as to Count I of the Third-Party Complaint for breach of contract because it is undisputed that SBSC and Suarez breached the Settlement Agreement.  ECF No. [202] at 9.  Specifically, Defendants argue that SBSC and Suarez continued to use the CRMs in violation of the Settlement Agreement.  *Id.* at 6.  Defendants further allege that SBSC and Suarez improperly copied Borodin's CRMs in creating CRM3.  ECF No. [234] at 6. Finally, Defendants argue that SBSC and Suarez breached the Settlement Agreement when they obtained a copyright over the CRMs on December 28, 2012 despite Borodin's October 9, 2012 copyright over the same.  ECF No. [202] at 6–7.  As a result, Defendants claim that Borodin incurred damages in the form of loss of ownership and loss of exclusive use of CRM1 and CRM2. *Id.* at 7.

In response, SBSC, Lifecell, and Suarez argue that Defendants have not met their burden on summary judgment.  ECF No. [227] at 9.  As a preliminary matter, SBSC, Lifecell, and Suarez first note that Defendants' Motion should be denied as to Lifecell because Lifecell was not a party to the Settlement Agreement.  *Id.*  Second, SBSC and Suarez argue that Defendants have failed to produce any evidence to support the Motion because CRM3 is not a derivation of CRM1 or CRM2, rather it was developed based on a new code from an entirely different programming language.  *Id.* at 10.  SBSC and Suarez emphasize that there is no evidence on the record that SBSC or Suarez used either CRM1 or CRM2 following the execution of the Settlement Agreement beyond modifying or deleting existing customer information from the database, as was agreed to by the parties.  *Id.* at 11–12.  Third, SBSC and Suarez note that because Defendants did not plead that SBSC and Suarez breached the Settlement Agreement by copyrighting the CRMs in the Second Amended Counterclaim, Defendants cannot rely on the alleged breach now.  *Id.* at 13.  Fourth, SBSC and Suarez argue that Defendants cannot claim that Borodin's ownership rights to CRM1 and CRM2 have been impeded because Borodin publicly filed the source codes to both CRMs, and as such cannot establish damages.  *Id.* at 13–14, 16.  Fifth, SBSC and Suarez argue that they did not take any actions inconsistent with Borodin's ownership of the CRMs because the December 28, 2012 copyright was registered in the name of Andres Ramirez (as a joint author with Borodin), who was not a party to the Settlement Agreement.  *Id.* at 14.  Sixth, SBSC and Suarez argue that the breach of contract claim is unsupported by the record because the Settlement Agreement only precludes use and ownership of the derivatives of CRM1 and CRM2, but not use and ownership of the CRMs themselves.  *Id.*

In the Reply, Defendants emphasize that SBSC and Suarez breached both the Interim Settlement Agreement and Settlement Agreement by continuing to use the CRMs and then by "repackaging" them as CRM3.  ECF No. [234]. at 6.[5]

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  *Venus Concept USA, Inc. v. Setiba Group, Inc.*, No. 19-22642-CIV, 2020 WL 2937895, at *5 (S.D. Fla. June 3, 2020) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)) (footnote omitted).  "Generally, whether there has been a breach of the terms of a contract is a question of fact for the factfinder."  *Id.* (quoting *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1377 (S.D. Fla. 2019)).

Here, Defendants argue that they are entitled to summary judgment because it is undisputed that SBSC and Suarez breached the Settlement Agreement by continuing to use the CRMs, by "repackaging" them into CRM3, and by registering them with the United States Copyright Office. That statement, however, is not supported by anything that has been provided to the Court. Defendants rely exclusively on the deposition testimony of Suarez wherein he testified, in his individual capacity, that following the execution of the Settlement Agreement, CRM2 was briefly used to transition into a new third-party customer database until CRM3 was developed.  ECF No. [240-1] at 63:15–23, 66:22–23. [6]  However, after conducting a thorough review of the June 26,

---

[5] In the Reply in Support of Borodin's Motion for Partial Summary Judgment, Defendants improperly make arguments in response to SBSC, Lifecell, and Suarez's Joint Motion for Partial Summary Judgment.  The Court does not endeavor to address those arguments here because they are not properly raised.

[6] Suarez also testified in his capacity as the corporate representative of SBSC on June 24, 2020. Defendants rely on Suarez's testimony at this deposition, arguing that Suarez admitted in that deposition that SBSC breached the Settlement Agreement by continuing to use the CRMs.  *See* ECF No. [202] at 6.  However, the portions of the deposition cited by Defendants are not part of

2020 deposition testimony submitted, the Court could not find testimony from Suarez unequivocally stating that the CRM1 and/or CRM2 were used in contravention of the Settlement Agreement or to create CRM3.  Further, Defendants have not provided any evidence to the Court in support of their allegation that CRM1 and/or CRM2 were copied in any way.

In response to Defendants' Motion, SBSC and Suarez emphasize that Defendants have failed to submit any evidence in support of their argument that the Settlement Agreement was breached.  SBSC and Suarez note that, as agreed to by the parties, SBSC used CRM2 for a brief period following the execution of the Agreement for the limited purpose of transferring its customers' information into a new, third-party database.  ECF No. [227] at 11.  In an additional attempt to rebut Defendants' claims, SBSC and Suarez submitted the deposition transcripts of Andres Ramirez and Piers Chambers, third parties who were hired to develop CRM3.  *Id.* at 10. Pertinent here, Ramirez testified that CRM3 is not a copy of CRM1 or CRM2 because it was written in a different programming language.  ECF No. [205-8] at 31:17–24.  Finally, SBSC and Suarez argue that the alleged copyright registration of the CRMs cannot be used as evidence to support a breach of contract claim against them because the registration was executed by Ramirez, who is not a party to the Settlement Agreement and is not a party here.

The Court finds that Lifecell, SBSC, and Suarez are entitled to summary judgment on Defendants' breach of contract claims.  First, because Lifecell was not a party to the Settlement Agreement, Defendants cannot assert any claims for breach of that Agreement against Lifecell. Second, Defendants have not submitted any evidence in support of their breach of contract claims

---

the Court record.  Instead, selected portions of this deposition were filed by Plaintiffs in conjunction with their Statement of Material Facts in Support of their Motion for Partial Summary Judgment.  *See* ECF No. [205-2].  The Court notes that because Plaintiffs only included certain pages of the deposition, the portions cited by Defendants in their Motion for Partial Summary Judgment are not part of the record.

against SBSC and Suarez. Specifically, Defendants have not submitted any evidence to prove that SBSC and/or Suarez continued to use the CRMs in contravention of the Settlement Agreement, that CRM3 was copied from CRM1 or CRM2, or that SBSC or Suarez improperly obtained a copyright for CRM1 or CRM2 in their names. In contrast, SBSC and Suarez have submitted evidence to rebut each of Defendants' allegations and Defendants have not endeavored to submit any rebuttal evidence. Therefore, the Court concludes that given Defendants' failure to produce any evidence in support of their breach of contract claims, no reasonable jury could find for Defendants on these counts. Accordingly, Defendants' Motion as to Count I of the Second Amended Counterclaim (breach of contract) and Count I of the Third-Party Complaint (breach of contract) should be **DENIED** and Lifecell, SBSC, and Suarez's Motion as to the same should be **GRANTED**.

> **b. SBSC, Lifecell, and Suarez Are Entitled To Summary Judgment As To Defendants' Fraud In The Inducement Claim**

Defendants argue that they are entitled to summary judgment as to Count II of the Second Amended Counterclaim for fraud in the inducement and as to Count II of the Third-Party Complaint for fraud in the inducement. ECF No. [202] at 10. Specifically, Defendants argue that SBSC and Suarez induced Borodin to enter into the November 3, 2012 Settlement Agreement based on the misrepresentations that Borodin would have exclusive ownership of CRM1, CRM2, and their progeny. *Id.* at 11. As to damages, Defendants claims that Borodin was induced into foregoing his one-third ownership interest in SBSC. *Id.* at 12.

SBSC and Suarez argue that Defendants' Motion should be denied and their Motion should be granted as to these counts because Defendants have not alleged a fraud separate and distinct from the breach of contract and have not alleged sufficient facts to support the elements of fraud in the inducement. ECF No. [227] at 16–20. In their Reply, Defendants argue that SBSC and

Suarez fraudulently induced Borodin to enter into the Interim Settlement Agreement and the Settlement Agreement in an effort "to eliminate [Borodin] from the company." ECF No. [234] at 2–3. Thereafter, SBSC and Suarez breached both the Interim Settlement Agreement and Settlement Agreement by continuing to use CRMs and "repackaging" them as CRM3. *Id.* at 6.

"Under Florida law, to state a cause of action for fraud in the inducement, a party must establish the following elements: 1) a false statement regarding a material fact; 2) the person making the statement knew or should have known that the representation was false; 3) intent by the person making the statement to induce action or reliance; and 4) injury suffered because of justifiable reliance on the representation." *Int'l Star Registry of Illinois v. Omnipoint Mktg., LLC*, 510 F. Supp. 2d 1015, 1024 (S.D. Fla. 2007) (citing *Biscayne Inv. Group, Ltd. v. Guar. Mgmt. Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005)).

"Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." *Rubesa v. Bull Run Jumpers, LLC*, No. 09-CV-81107, 2010 WL 376320, at *4 (S.D. Fla. Jan. 26, 2010) (quoting *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)). "Fraud in the inducement is generally considered to be independent from a breach of contract." *Inspirations Nevada LLC v. Med Pro Billing, Inc.*, No. 20-CV-60268, 2021 WL 2156677, at *6 (S.D. Fla. May 26, 2021) (citing *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1240 (Fla. 3d DCA 2020)). However, "where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the [independent tort doctrine] applies and the parties are limited to pursuing their rights in contract." *Id.* (quoting *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 78 (Fla. 3d DCA 1997)) (alterations supplied); *Amaro v. Certain Underwriters at Lloyd's London*, No. 18-23503-CIV, 2019 WL 4694149, at *5 (S.D. Fla. July 31, 2019) (quoting

11

*May v. Nygard Holdings Ltd.*, 203 F. App'x 949, 951 (11th Cir. 2006)) ("Fraudulent in the inducement is a tort independent of a breach of contract claim because 'it requires proof of facts separate and distinct from those required to demonstrate breach of contract.'").

In this case, Defendants' breach of contract claims stem from Borodin's exclusive ownership of CRM1, CRM2, and their progeny. Defendants allege that SBSC and Suarez breached the Settlement Agreement by continuing to use the CRMs in contravention of the Agreement, by copying the CRMs' code in the development of CRM3, and by improperly obtaining a copyright over the CRMs. In support of the fraud in the inducement claims, Defendants argue that Borodin was induced into entering into the Settlement Agreement and that, despite its terms, SBSC and Suarez continued to use the CRMs, copied the code to the CRMs in the creation of CRM3, and improperly obtained a copyright over the CRMs.

The Court finds that, as plead and argued up to this point, there is no distinction between the breach of contract claim and the fraud in the inducement claim. Indeed, the alleged misrepresentations regarding the use of the CRMs are inseparable from the essence of the Settlement Agreement because the Agreements' purpose was to give Borodin certain exclusive rights over the CRMs and their derivations. Because the alleged misrepresentations that form the basis of the alleged fraud also form the basis of the breach of contract claim, Defendants should be precluded from pursuing a fraud claim based on these misrepresentations. Therefore, Defendants' Motion as to Count II of the Second Amended Counterclaim (fraud in the inducement) and as to Count II of the Third-Party Complaint (fraud in the inducement) should be **DENIED** and SBSC, Lifecell, and Suarez's Motion as to the same should be **GRANTED**.

### c. Plaintiffs Are Entitled To Summary Judgment As to Defendants' False Advertising/Lanham Act Claim

Plaintiffs argue that they are entitled to summary judgment as to Count III of the Second Amended Counterclaim for false advertising. ECF No. [225] at 26. Specifically, Plaintiffs state that because Borodin engaged in the alleged false advertising while he was employed by SBSC and never raised any concerns about the advertising practices, he is now precluded from raising such claims under the doctrine of unclean hands. *Id.* at 26–27. Plaintiffs further note that the accusations that SBSC fraudulently used celebrity endorsements are unsupported by the record because, unbeknownst to Defendants, Plaintiffs entered into an agreement with GBK Productions, which facilitated the production and use of celebrity endorsements of Lifecell products. *Id.* at 27–28. Additionally, Plaintiffs state that the claims that Lifecell's ingredient labels are inaccurate and unsupported because they are based on outdated information acquired while Borodin was employed by SBSC in 2012 and the record reflects that Lifecell has since updated its ingredient labels. *Id.* at 28–29. Finally, Plaintiffs argue that the damages sought by Defendants for the alleged false advertising are solely based on speculation because there is no record evidence "directly linking any claimed acts of false advertising to actual damages sustained." *Id.* at 30–31. In response, Defendants argue that Plaintiffs are not entitled to summary judgment as to the false advertising claims because Defendants have met their initial burden of establishing the elements of false advertising. ECF No. [240] at 10–11. In their Reply, Plaintiffs argue that Defendants have failed to meet their burden of establishing a genuine issue of material fact. ECF No. [238] at 11.

In order to state a claim for false advertising under the Lanham Act, the moving party must establish that:

> (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the

13

> misrepresented product or service affects interstate commerce, and
> (5) the movant has been—or is likely to be—injured as a result of
> the false advertising.

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir. 2008) (quoting

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir.

2002)).   Conjecture or speculation is not sufficient to satisfy the non-moving party's "burden in

responding to a properly supported summary judgment motion."  *Avril v. Vill. S. Inc.*, 934 F. Supp.

412, 417 (S.D. Fla. 1996) (citing *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.

1987)).

In support of their false advertising claim, Defendants argue that SBSC and Lifecell have

used fraudulent celebrity endorsements to promote their products and have included false

information in their product labels, which have inhibited the sales of Cosmedique products.   In

their Response, Defendants merely provide one sentence of analysis to state that Plaintiffs' Motion

should be denied because "the burden has been met."  ECF No. [239] at 11.

Defendants' claims are only supported by Borodin's testimony; specifically, Borodin

claims that, based solely on the knowledge he acquired while employed by SBSC up to 2012, he

can attest that the celebrity endorsements are fraudulent and the product labels are false.  During

his June 19, 2020 deposition, when Borodin was asked how he knew that SBSC did not obtain

celebrity consent for the endorsements it published, he responded: "It started when I was back in

the company, that's how I know."  ECF No. [200] at 6–7.  When asked how he knew the product

labels were false or fraudulent, Borodin stated that his knowledge was derived from the

information he was privy to while employed by SBSC and from the information published on the

product webpage.  *Id.*  at 202:21–25, 203:10–16.  Moreover, when asked whether his personal

knowledge regarding SBSC and Lifecell's celebrity advertising and product labeling ended in

14

2012, Borodin responded affirmatively.  *Id.* at 201:4–7, 202:21–24.  In contrast, Plaintiffs have submitted their 2014 agreement with GBK Productions, wherein GBK agreed to provide photos of celebrities endorsing Plaintiffs' products.  ECF No. [226-6].  The GBK Agreement provides that Plaintiffs are entitled to use said photos on their website.  *Id.*

After reviewing the summary judgment evidence and arguments presented by the parties, the Court concludes that the evidence that Plaintiffs engaged in false advertising is insufficient to bar summary judgment.  Borodin's testimony regarding what he observed while employed by SBSC in 2012 is mere speculation that is not grounded on any fact that was either proffered or otherwise discovered.  Because Defendants have not produced any evidence that would permit a jury to determine, without speculating, whether Plaintiffs engaged in false advertising of their products, Defendants have failed to meet their initial burden of proof concerning the elements of their claim.  As a result, Plaintiffs' Motion as to Count III of the Counterclaim (false advertisement – Lanham Act) should be **GRANTED**.

### d.  Issues Of Material Fact Preclude The Entry Of Summary Judgment On Plaintiffs' Copyright Infringement Claim

Plaintiffs argue that they are entitled to summary judgment as to Count II of their Amended Complaint for copyright infringement because it is undisputed that Lifecell is the owner of the copyright registration nos. VA2-109-400 and VA 2-109-399 for the Lifecell product components and that Defendants knowingly copied the textual materials subject to said copyrights.  ECF No. [225] at 9–12.  Specifically, Plaintiffs argue that Cosmedique's product packaging infringes on Plaintiffs' copyright because both boxes and tubes:

> 1) use red color schemes; 2) utilize the phrase "all in one antiaging treatment"; 3) utilize silver lines to separate wording; 4) utilize identical lists of product features; 5) utilize the same textual placement of other product features; 6) utilize the same wording on

> back of product; 7) utilize similar or identical bullet points on back
> of tube; and 8) utilize identical product footers.

*Id.* at 12.

In response, Defendants first argue that genuine issues of material fact prevent the entry of summary judgment on Plaintiffs' copyright infringement claim. ECF No. [239] at 6–7. Additionally, Defendants note that Plaintiffs are not entitled to summary judgment on the copyright infringement claims because they have not introduced any evidence regarding their alleged damages. *Id.* at 7. In their Reply, Plaintiffs argue that Defendants are liable for copyright infringement because they have admitted that Lifecelll is the owner of a valid copyright and have failed to raise any factual questions to be addressed by the trier of fact. ECF No. [238] at 2–3.

"To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "The Eleventh Circuit has explained that the second element breaks down into 'two separate inquiries: 1) whether the defendant, as a factual matter, copied portions of the plaintiff's [work]; and 2) whether, as a mixed issue of fact and law, those elements of the [work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable.'" *Cortes v. Universal Music Latino*, 477 F. Supp. 3d 1290, 1295–96 (S.D. Fla. 2020) (quoting *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996)) (alterations supplied). "Regardless of whether copying is proved by direct or indirect evidence, 'the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements.'" *Roberts v. Gordy*, No. 13-24700-CIV, 2015 WL 12911328, at *2 (S.D. Fla. Sept. 15, 2015) (quoting *Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000)).

The Eleventh Circuit has "defined substantial similarity as existing 'where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 (11th Cir. 2008) (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir.1982)). "In order to establish substantial similarity, Plaintiffs must satisfy: (1) an extrinsic, objective test, and (2) an intrinsic, subjective test." *Id.* (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999)). "Under the extrinsic test, a court will inquire into whether, as an objective matter, the works are substantially similar in protected expression." *Lil' Joe Wein Music, Inc. v. Jackson*, 245 Fed. Appx. 873, 877 (11th Cir. 2007). With respect to "the extrinsic test, the Court determines whether Plaintiffs seek to protect uncopyrightable elements; if so, the Court will grant summary judgment for the defendants. With respect to the intrinsic test, the Court determines whether, upon proper instruction, a reasonable jury could find that the two works are substantially similar." *Roberts*, 2015 WL 12911328, at *2 (citations omitted). "The question of substantial similarity can be decided as a matter of law on a motion for summary judgment either where the 'similarity concerns only noncopyrightable elements of a plaintiff's work, or when no reasonable trier of fact could find the works substantially similar.'" *Jackson*, 245 Fed. Appx. at 877 (quoting *Lassin v. Island Def Jam Music*, No. 04–22320–CIV, 2005 WL 5632056, at *6 (S.D. Fla. Aug. 8, 2005)).

In this case, Plaintiffs contend that Defendants infringed on their copyright over the Lifecell product box and tube. Plaintiffs argue that they are entitled to summary judgment on this count because there is a substantial similarity between the layout and text of the Lifecell and Cosmedique product components. In determining whether there is a substantial similarity between both components, the Court considers whether an average lay observer would recognize the

17

Cosmedique components as having been copied from the Lifecell components.  The Court notes that although both product boxes and tubes have a similar red color scheme and textual layout, "[a]nalyzing relatively amorphous characteristics . . . creates a danger of unwittingly extending copyright protection to unoriginal aspects of the work."  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1215 (11th Cir. 2000) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13:03[A][1][c]).  Therefore, whether a reasonable jury could find the boxes and tubes substantially similar based on their color, layout, and textual overlap, is an inquiry that is more appropriately conducted by a jury.  Accordingly, Plaintiffs' Motion as to Count II of the Amended Complaint (copyright infringement) should be **DENIED**.

### e. Plaintiffs Are Not Entitled To Summary Judgment On Their Unfair Competition Claim.

Plaintiffs argue that they are entitled to summary judgment as to Count III of their Complaint for unfair competition because it is undisputed that Defendants' website included unsubstantiated claims in violation of Section 5(a) and Section 12 of the Federal Trade Commission ("FTC") Act.  ECF No. [225] at 13–14.  Plaintiffs argue that Defendants make false claims on their website and include fabricated customer photographs and testimony, which violate the FTC rules and gives Defendants an unfair competitive advantage.  *Id* at 14–16.  In response, Defendants argue that Plaintiffs do not have standing to assert such claim, but even if they did, the record does not reflect that what damages (if any) Plaintiffs suffered by the alleged unfair competition.  ECF No. [239] at 7.  In their Reply, Plaintiffs argue that Defendants failed to rebut Plaintiffs' arguments regarding Defendants' FTC violation; Plaintiffs note that they are not required to prove damages at this stage of the litigation.  ECF No. [238] at 4.

"Congressional intent to create a private right of action will not be presumed.  There must be clear evidence of Congress's intent to create a cause of action."  *McDonald v. S. Farm Bureau*

*Life Ins. Co.*, 291 F.3d 718, 723 (11th Cir. 2002) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1345 (11th Cir. 1997)).  "There is no private cause of action implied under the Federal Trade Commission Act."  *Lingo v. City of Albany Dept. of Cmty. & Econ. Dev.*, 195 Fed. Appx. 891, 894 (11th Cir. 2006) (citing *Roberts v. Cameron–Brown Co.*, 556 F.2d 356, 361 n.6 (5th Cir. 1977)); *see, e.g.*, *Brown v. W. Palm Hyundai & Santander Bank*, No. 20-CV-80041, 2020 WL 5742143, at *1 (S.D. Fla. Sept. 16, 2020), *aff'd sub nom. Brown v. Santander Bank*, No. 20-13550, 2021 WL 1961931 (11th Cir. May 17, 2021) (dismissing a one-count complaint for alleged violations under Section 5 of the Federal Trade Commission Act because "there is no private cause of action" under the Act); *Valet Apartment Services, Inc. v. Atlanta Journal & Constitution*, 865 F. Supp. 828, 833 (N.D. Ga. 1994) (dismissing for failure to state a claim upon which relief could be granted because that there was no private cause of action under Section 5 of the Federal Trade Commission Act).

As a preliminary matter, the Court notes that Defendants have not moved for summary judgment on this count; instead, they raise the issue of standing in response to Plaintiffs' Motion in only one sentence: "While Plaintiffs have never set forth the basis for their standing, Defendants will respond by adopting their position set forth in the marketing of Cosmedique products."  ECF No. [239] at 7.  Notwithstanding, the Court may *sua sponte* dismiss a claim so long as the procedure employed by the Court is fair, which includes providing notice to the parties and affording them the opportunity to respond.  *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (noting that a court must afford due process before dismissing an action on its own motion).  Indeed, Plaintiffs were on notice of the standing argument when raised by Defendants, albeit in a conclusory fashion.  Plaintiffs had the opportunity to respond to the issue of standing in their Reply.  Additionally, during the hearing on this matter, the Court specifically asked the parties

to address this issue.  Accordingly, Plaintiffs had ample notice of the standing issue within the context of the FTC Act and had plenty of opportunities to address it.

The Court, on its own motion, finds that Plaintiffs do not have standing to assert this claim because there is no private cause of action under Section 5 or Section 12 of the FTC Act.  As currently plead, Plaintiffs allege that Defendants have engaged in "unfair competition through deceptive acts or practices and making false claims . . . in violation of Section 5(a) and 12 of the Federal Trade Commission Act."  ECF No. [225] at 13–14.  In support of summary judgment, Plaintiffs have not cited a single case in which a private cause of action was brought under the FTC Act.  Instead, Plaintiffs exclusively rely on cases in which the Federal Trade Commission brought suit, in its regulatory capacity, for violations of the FTC Act.  Accordingly, because there is no private cause of action under the FTC Act, the undersigned recommends that Count III of the Complaint for unfair competition be **DISMISSED** and Plaintiffs' Motion as to the same be **DENIED AS MOOT**.

## IV.   CONCLUSION

As set forth above, the undersigned **RECOMMENDS** that:

1.      Defendants' Motion as to Count I of the Second Amended Counterclaim (breach of contract) and Count I of the Third-Party Complaint (breach of contract) should be **DENIED** and SBSC, Lifecell, and Suarez's Motion as to the same should be **GRANTED**;

2.      Defendants' Motion as to Count II of the Second Amended Counterclaim (fraud in the inducement) and as to Count II of the Third-Party Complaint (fraud in the inducement) should be **DENIED** and SBSC, Lifecell, and Suarez's Motion as to the same should be **GRANTED**;

3.      Plaintiffs' Motion as to Count III of the Counterclaim (false advertisement – Lanham Act) should be **GRANTED**;

4.      Plaintiffs' Motion as to Count II of the Amended Complaint (copyright infringement) should be **DENIED**; and

5.      Count III of the Complaint for unfair competition should be **DISMISSED** and Plaintiffs' Motion as to the same should be **DENIED AS MOOT**.

The undersigned notes that during the March 23, 2021 hearing, the parties requested that this matter be referred to mediation.  Therefore, pursuant to the parties' request, the undersigned recommends that this case be referred to mediation and stayed for thirty (30) days upon the entry of this Report and Recommendation to permit the parties to engage in mediation.

## V.      OBJECTIONS

Subject to the thirty-day stay recommended, a party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Any request for an extension of this deadline must be made within seven (7) calendar days from the date of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on June 7, 2021.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE